UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 4:19-cr-12-TRM-CHS |
| | ) |
| DUSTIN SCOTT SPRADLING | ) |

## REPORT AND RECOMMENDATION

### I. Introduction

Defendant Dustin Scott Spradling is charged as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). [Doc. 36, Superseding Indictment]. He moves to suppress evidence of this crime police found in his residence at 16 Forest Ridge Lane, Apartment 2, Fayetteville, Tennessee on December 6, 2018, while executing a search warrant. [Doc. 48, Motion to Suppress]. Defendant seeks suppression on the ground that the affidavit used to obtain the search warrant fails to support probable cause. For the reasons that follow, the Court **RECOMMENDS** that the motion to suppress be **DENIED**.

### II. Facts

Special Agent Stephen Gordy of the Bureau of Alcohol, Tobacco, Firearms, and Explosives prepared and attested to the veracity of the affidavit at issue in this case. He stated that the place to be searched was Dustin Spradling's residence which he specifically identified as being "located at 16 Forest Ridge Lane, Apartment 2, Fayetteville, Tennessee." [Doc. 51-1, Gordy Aff. ¶ 6]. He described the residence as a "one story structure" having "tan siding with white trim and black fake shutters and black shingles." [*Id*. ¶ 5]. He further stated Defendant's residence was the middle unit of a triplex with the number "2" on the front door. [*Id*.]. Six times in the affidavit reference is made to 16 Forest Ridge Lane, Apartment 2, Fayetteville, Tennessee, as the place to be searched.

[Doc. 51-1, Gordy Aff. ¶ ¶ 2,5, 6, 8, 9, 11].

Attachment A to the search warrant provides a similar description of "the property to be searched" and directions to reach this address. [Doc.51-1, Attachment A]. Attachment A also includes a photograph of the residence and an aerial photograph of the neighborhood where the residence is located. [*Id*.]. The address, 16 Forest Ridge Lane, Apartment 2, Fayetteville, Tennessee, is identified three times in Attachment A. [*Id*.]. Attachment B is a list of the incriminating items expected to be found in Defendant's residence. Paragraph 2 mistakenly refers to "photographs, videotapes, slides, and other visual depictions of the occupants and owner(s) of *307 Robertson Street*, Fayetteville, TN, illegally possessing firearms." [Doc. 51-1, Attachment B ¶ 2]. However, Paragraph 7 of Attachment B correctly references "fruits, evidence, and instrumentalities of crimes" by the occupants of "16 Forest Ridge Lane, Apartment 2, Fayetteville, Tennessee. . . ." [*Id*. ¶ 7].

In his affidavit, Agent Gordy provided further relevant information: He knows Defendant to be a convicted felon. [*Id*. ¶ 6]. He has learned in his training and experience that persons who own firearms generally do so for long periods of time, especially persons who are prohibited from possessing firearms because it is more difficult for them to obtain them. [*Id*. ¶ 10]. Finally, Agent Gordy sets out the critical substance of the affidavit:

> 7. On November 29, 2018, a confidential source (CS-1) was interviewed by law enforcement officers. CS-1 has previously provided law enforcement reliable information that has led to the arrest of two defendants. Within the 72 hours preceding the interview, CS-1 had seen a small caliber handgun in **DUSTIN SPRADLING'S** residence.
>
> 8. On November 27, 2018, information was received from a confidential source (CS-2). CS-2 provided self-incriminating information to law enforcement that was deemed reliable. CS-2 stated that **DUSTIN SPRADLING** keeps firearms inside of the residence at 16 Forest Ridge Lane, Apartment 2, Fayetteville, Tennessee. On November 15, 2018, CS-2 observed a SKS style rifle and pistol inside of **DUSTIN SPRADLING'S** residence.

9. On November 27, 2018, Lonnie JOHNSON was interviewed by law enforcement officers. JOHNSON provided self-incriminating information to law enforcement that was deemed credible. JOHNSON agreed to allow his name to be used in this affidavit with the knowledge that the affidavit could be obtained by **DUSTIN SPRADLING**. JOHNSON stated that he knew **DUSTIN SPRADLING** keeps firearms in his residence located at 16 Forest Ridge Lane, Apartment 2, Fayetteville, Tennessee. Specifically, Lonnie JOHNSON was in **DUSTIN SPRADLING'S** residence approximately 30 days ago. JOHNSON recalled seeing two firearms in the residence. One firearm was a "Chinese assault rifle"; the other was a .25 caliber pistol. **SPRADLING** told JOHNSON the rifle functioned. **SPRADLING** told JOHNSON he traded one gram of meth for the .25 caliber pistol.

[Gordy Aff. ¶¶ 7-9]. The undersigned Magistrate Judge signed the search warrant on December 1, 2018.

### III. Analysis

Defendant challenges the affidavit on several grounds. Defendant asserts:

- The reliability and veracity of the informants is not established.

- Law Enforcement did no investigation to corroborate informant's statements.

- There are two addresses listed in the affidavit.

- The information contained in the affidavit is stale.

[Doc. 49, Pl.'s br. at 2].

The Fourth Amendment provides no warrant shall issue but upon probable cause, supported by oath or affirmation . . . ." U.S. Const. amend IV. To establish probable cause to justify a search warrant, an affidavit must set forth facts which indicate "a fair probability exists that evidence of a crime will be located on the premises of the proposed search." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (internal citations omitted); *see also United States v. Hines*, 885 F.3d 919, 923 (6th Cir. 2018); *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005). In determining whether the affidavit sets forth probable cause to issue the search warrant, the Court is limited to

consideration of the totality of the circumstances set out in the four corners of the affidavit *Illinois v. Gates*, 462 U.S. 213, 230 (1983) (totality of the circumstances standard); *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 565 n. 8 (1971) (Court limited to review of affidavit itself); *Hines*, 885 F.3d at 923 (in considering the totality of the circumstances, "the court is limited to examining the information contained within the four corners of the affidavit") (citation omitted). The Sixth Circuit in *United States v. Shamaeizadeh*, 80 F.3d 1131, 1136 (6th Cir. 1996) described the application of the *Gates* test:

> In applying its "totality of the circumstances" test, the *Gates* court identified three factors in determining whether probable cause existed: 1) the basis of the informant's knowledge; 2) the reliability of the informant; and 3) the corroborative evidence presented by the government. *Gates*, 462 U.S. at 23032, 245, 103 S.Ct. at 232829, 233536; *Leake*, 998 F.2d at 1363. The *Gates* court noted that these factors are not to be analyzed as "separate and independent requirements to be rigidly exacted in every case." *Gates*, 462 U.S. at 230, 103 S.Ct. at 2328. Rather, the reviewing court is to weigh them together in determining whether they form a substantial basis for finding probable cause. *Id*. The strength of one or more of these factors may compensate for the deficiencies of another factor. *Gates*, 462 U.S. at 23334, 103 S.Ct. at 232930.

The court reviewing a search warrant affidavit is to avoid a "grudging or negative attitude" toward a warrant or a "hypertechnical critique" of a warrant. *United States v. Allen,* 211 F.3d 970, 973 (6th Cir. 2000) (*en banc*).

Where an affidavit relies upon hearsay information from a confidential informant to supply probable cause, "a court must consider the veracity, reliability, and the basis of knowledge of that information as part of the totality of the circumstances for evaluating the impact of the information." *Frazier*, 423 F.3d at 532 (quoting *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003)). Independent police corroboration of a confidential informant's story is not required to support probable cause unless the affidavit lacks indicia of the informant's reliability, in which case "courts insist that the affidavit contain substantial independent police corroboration."

*Frazier*, 423 F.3d at 532; *see also United States v. Crumpton*, 824 F.3d 593, 616 (6th Cir. 2016) (same); *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010) ("independent corroboration of the tip by police is not required when the court is provided with assurances that the informant is reliable.").

### A. Reliability and Veracity of Informants and Lack of Police Corroboration

With respect to the present case, to establish CS-1's veracity and reliability, the affidavit provides that CS-1 has previously provided law enforcement reliable information that led to the arrests of two defendants. Defendant asserts that this information does not establish the veracity and reliability of CS-1 because the affidavit does not specify: (1) whether information given by CS-1 led to *convictions* as opposed to arrests; (2) whether the arrests were on one or two separate occasions; and (3) that CS-1 saw the handgun at "16 Forest Ridge Lane" (as opposed to Defendant's residence). [Doc. 49, Pl.'s br. at 3].

The detail Defendant demands would have bolstered the informant's reliability and veracity, but its absence does not render the CS-1's information baseless due to a lack of credibility. An affidavit "is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (en banc). "Sixth Circuit precedent clearly establishes that the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable." *United States v. Greene,* 250 F.3d 471, 480 (6th Cir. 2001) (citing *Allen*, 211 F.3d at 975). In *Greene*, the affiant stated that the informant "had assisted federal and state law enforcement officials in the past and this information had resulted in numerous felony arrests." The *Greene* Court concluded this information was sufficient to allow the magistrate to reasonably rely upon the information supplied by the informant to issue the search warrant. *Id.* at 480. Details

about that information are not required to establish the reliability and veracity of the informant:

> Greene next argues that the affidavit fails to indicate the specific interaction the confidential informant had with law enforcement officials, and therefore, there was insufficient information to support a finding that the confidential informant was reliable. However, Sixth Circuit precedent clearly establishes that the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable.

*Id*. *See also Hines*, 885 F.3d at 924 (holding confidential sources were sufficiently credible even though only described in affidavit as "reliable" where informants' knowledge was based on first-hand observations detailed in the affidavit.) Further, that CS-1 met face to face with law enforcement to provide information about 16 Forest Ridge Lane bolsters CS-1's credibility. *See Greenburg*, 410 F.3d at 67 (face-to-face contact between agent and police supports informant's credibility because agent had the opportunity to question the informant and "take measure of the informant's credibility" and the agent knew informant's identity and "therefore could hold informant responsible if he provided false information.") Finally, that CS-1's information is derived from first-hand observations also bolsters credibility. *See United States v. Pasquarille*, 20 F.3d 682, 687 (6th Cir. 1994) (holding that statement by informant who was known to police that illegal conduct was observed firsthand gave tip indicium of credibility). *See also Hines*, 855 F.3d at 925 (informant's firsthand knowledge bolsters informant's credibility); *Greenburg*, 410 F.3d at 67 ("A specific, first-hand account of possible criminal activity is a hallmark of a credible tip.").

As to Defendant's address, Agent Gordy specified in his affidavit that Dustin Spradling's residence was "located at 16 Forest Ridge Lane, Apartment 2, Fayetteville, Tennessee." [Gordy Aff. ¶ 5]. Thus, Agent Gordy's statement in paragraph 7 that CS-1 told him he had seen a firearm

in Defendant's residence is sufficient to establish that CS-1 saw the firearm at 16 Forest Ridge Lane.

To establish CS-2's veracity and reliability, the affidavit states that CS-2 provided self-incriminating information to law enforcement that was deemed credible. A declaration against penal interests is also a reason to accept as truthful an informant's statement. *United States v. Harris*, 403 U.S. 573, 583 (1971). In *Harris*, the Supreme Court explained,

> People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, *carry their own indicia of credibility-sufficient at least to support a finding of probable cause to search.*

*Id.* (emphasis added), *see also United States v.* Johnson, 707 F.3d. 655, 658 (6th Cir. 2013); United *States v. Rosenbarger,* 536 F.2d 715, 719 (6th Cir. 1976). Nevertheless, Defendant faults this information on the ground that it does not provide enough detail about the nature of the self-incriminating information. More detail would have further bolstered CS-2's credibility, but the Court does not find that a lack in specifics about the self-incriminating information defeats the credibility of the informant. "When a self-incriminating statement is provided by an informant whose identity is known to the authorities, the statement is more likely to be true because of the risk inherent in making such a statement." *Greenburg*, 410 F.3d at 67-68. Thus, CS-2's self-incriminating statements—whatever they were—provide some foundation for his/her credibility. Further—as with CS-1—the firsthand observations of CS-2 bolster the informant's credibility. Finally, CS-2's specificity about what he/she saw, i.e., an SKS style rifle inside the residence, also bolsters credibility.

To establish the third informant's veracity and reliability, the affidavit names the informant, Lonnie Johnson, and states that he provided self-incriminating information deemed credible by law enforcement. Defendant admits that, because Lonnie Johnson is named in the

affidavit there is an indicium of credibility. However, Defendant asserts this indicium of credibility is insufficient because: (1) the affidavit does not indicate what the self-incriminating information was; (2) "there is no history of reliability between Johnson and law enforcement"; and (3) the affidavit does not specify whether the self-incriminating information shared by Johnson related to the instant criminal investigation. [Doc. 49, Pl.'s br. at 4]. Again, the Court disagrees with Defendant as to the level of detail that must be included in the affidavit to establish the veracity and reliability of this third informant.

Named informants possess credibility and reliability due to the mere fact that they are named:

> *Statements from a source named in a warrant application . . . are generally sufficient to establish probable cause without further corroboration because the legal consequences of lying to law enforcement officials tend to ensure reliability. United States v. Miller,* 314 F.3d 265, 269–70 (6th Cir.2002) (rejecting argument that a warrant was invalid because it "failed to provide any basis as to the reliability or veracity" of a named informant); *United States v. Pelham,* 801 F.2d 875, 878 (6th Cir.1986) ("When a witness has seen evidence in a specific location in the immediate past, and is willing to be named in the affidavit," probable cause is generally established).

*United States v. Hodge*, 714 F.3d 380, 384-85 (6th Cir. 2013) (emphasis added). *See also United States v. Moore,* 473 F. App'x 495, 497 (6th Cir. 2012) ("probable cause exists where the informant is named and relates seeing the defendant committing a crime inside [his] residence") (citing *United States v. Miller*, 314 F.3d 265, 270 (6th Cir. 2002)). Thus, the mere fact that Johnson was willing to be named in the affidavit as an informant who observed contraband in Defendant's residence is sufficient to establish his veracity and reliability. That Johnson gave law enforcement self-incriminating information is an additional indicium of veracity and reliability. *Greenburg*, 410 F.3d at 67-68.

There is no independent police corroboration in this affidavit. However, having established

the veracity and reliability of the three informants, independent police corroboration was not necessary for police to rely upon the information provided by the sources. *Frazier*, 423 F.3d at 532; *see also Crumpton*, 824 F.3d at 616; *United States v. Runyon*, F. App'x 379, 383 ("if a confidential informant—personally known by the [officer] to be reliable—allege[s] direct, personal observation of criminal activity, then the [officer] [does] not have to include in the affidavit further corroboration of the informant's allegations.") (brackets original) (quoting *United States v. Brown*, 732 F.3d 569, 574 (6th Cir. 2013)). On the other hand, the informants themselves did provide some corroboration for each other because their own personal observations of firearms in Defendant's residence are consistent. The Court concludes that the three informants were sufficiently credible—especially when considering the three statements in conjunction with each other—for the affiant to rely upon their statements in presenting his affidavit for a search warrant.

### B. Defendant's Staleness Argument

Defendant asserts that the 30-day-old information provided by Lonnie Johnson was stale and, therefore, cannot be relied upon. However, as Defendant admits, "the case law indicates that a staleness claim is difficult to raise in a case involving firearms." See *United States v. Pritchett*, 40 Fed. Appx. 901, 906 (6th Cir. 2002) (information four years old of a crate of weapons was not stale because crates of weapons tend to be stored semi-permanently in a house); *United States v. Goodwin,* 552 Fed. App'x. 541, 544 (6th Cir. 2014) (month old information regarding an expensive machine gun was not stale). Defendant nevertheless asserts this case is distinguishable from *Pritchett* and *Goodwin* because the affidavit did not provide how long Defendant had lived at 16 Forest Ridge Lane and the weapons recovered at the premises were not the weapons described in the affidavit.

The affidavit provides information from three informants that they saw firearms inside

Defendant's residence at 16 Forest Ridge Lane—one 30 days before the warrant was issued; one 14 days before the warrant was issued; and one 3 days before the warrant was issued. This information is sufficient to demonstrate that the place to be searched was not a transitory address at the time the search warrant was issued.

As for what was found when the search warrant was executed, as previously stated, the Court's review is limited to the information provided in the affidavit—not what was learned after the search warrant was executed.

### C. An Incorrect Address in Attachment B

Finally, the Court addresses Defendant's argument that the misstatement in Attachment B of the address to be searched is somehow a fatal flaw in the search warrant application. Defendant provides no authority for this argument. The search warrant affidavit was unequivocally clear that the place to be searched was 16 Forest Ridge Lane—mentioning this address six times. Attachment A, which describes the place to be searched, lists 16 Forest Ridge Lane as the place to be searched. There is only one place in the search warrant application which references "307 Robertson Street, Fayetteville, Tennessee." That error is found in Attachment B. This mistake appears only once and is clearly a clerical error given the many references to "16 Forest Ridge Lane" elsewhere, as well as the correct reference to 16 Forest Ridge Lane in another paragraph of Attachment B. In determining whether a clerical error, such as a wrong address, fatally undermines a search warrant,

> [t]he touchstone is whether "the description is such that an officer with a search warrant can, with reasonable effort, ascertain and identify the place intended." *Steele*, 267 U.S. at 503, 45 S.Ct. 414. In this context, the Sixth Circuit rule provides that "[t]he knowledge of the executing officers in this case is a factor which may cure any insufficiencies in the search warrant's description of the premises." *United States v. Brown*, 49 F.3d 1162, 1169 (6th Cir.1995) (citing *United States v. Williamson*, 1 F.3d 1134, 1136 (10th Cir.1993).) Furthermore, "when one of the executing officers is the affiant who describes the property to the judge, and the judge finds probable cause to search the property as described by the affiant, and the search is confined to the areas which the affiant described, then the search, in

this case, is in compliance with the fourth amendment*." United States v. Gahagan*, 865 F.2d 1490, 1499 (6th Cir.), cert. denied, 492 U.S. 918, 109 S.Ct. 3242, 106 L.Ed.2d 590 (1989).

*United States v. Johnson*, 558 F.Supp.2d 807, 812 (E.D. Tenn. 2008). For the reasons stated, the Court concludes that the error in Attachment B would not have prevented an officer from ascertaining and identifying the correct place to be searched and is therefore not a basis to grant Defendant's motion to suppress.

### D. The Affidavit Provided Probable Cause to Search Defendant's Residence

The Court concludes that, under the totality of the circumstances, the affidavit provides sufficient information to conclude that, at the time the search warrant was issued, a fair probability existed that firearms would be found inside Defendant's residence at 16 Forest Ridge Lane, Fayetteville, Tennessee. While there are some weaknesses in the affidavit, other aspects of the affidavit are strong. CS-1 told law enforcement on November 29, 2018, that within the preceding 72 hours he had personally observed inside Defendant's residence a small caliber handgun. CS-2 told law enforcement on November 27, 2018, that on November 15, 2018, he had seen a SKS style rifle and a pistol inside Defendant's residence. On November 27, 2018, Lonnie Johnson told law enforcement that 30 days prior, he had seen two firearms, a Chinese assault rifle and a .25 caliber pistol, in Defendant's residence. Defendant's residence is identified as 16 Forest Ridge Lane, Apartment 2, Fayetteville, Tennessee. Agent Gordy stated that he knows, based on his experience and training, that those who own and possess firearms generally do so for long periods of time, especially if that person is prohibited from obtaining firearms, because it is so difficult to obtain them. This information is more than adequate, when considered as a whole, to provide a fair probability that evidence of a crime in violation of 18 U.S.C. § 922(g) would be found at Forest Ridge Lane in Fayetteville, Tennessee.

## IV. Conclusion

For the reasons stated, it is **RECOMMENDED** that Defendant's Motion to Suppress be **DENIED**.

**ENTER.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE